```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X

UNITED STATES OF AMERICA,
                                          MEMORANDUM & ORDER
            v.
                                          18-cr-257 (KAM)
DAMIEN FOLKES,

                Defendant.

---------------------------------X
```

**KIYO A. MATSUMOTO, United States District Judge**:

Damien Folkes ("Mr. Folkes") and two co-defendants were charged in May 2018 with conspiracy to import cocaine and conspiracy to possess cocaine with intent to distribute.[1] On December 27, 2018, Mr. Folkes pleaded guilty before this court to the first count of an indictment, conspiracy to import cocaine. On July 7, 2020, Mr. Folkes brought a motion seeking to withdraw his guilty plea. (ECF No. 160, Motion to Withdraw Plea of Guilty ("Mot.").) For the reasons herein, Mr. Folkes's motion is respectfully DENIED.

## Background

According to the government's allegations, on May 2, 2018, Mr. Folkes's co-defendant, Ms. Guthrie, took a flight from Kingston, Jamaica to John F. Kennedy International Airport in

---

[1] One of Mr. Folkes's co-defendants is his wife, Rasheda Jadusingh ("Ms. Jadusingh"), who pleaded not guilty and is scheduled to go to trial in October 2020. The other co-defendant, Tassana Guthrie ("Ms. Guthrie"), pleaded guilty in this action.

Queens, New York. (ECF No. 1, Complaint, at ¶ 1.) Upon her arrival in the United States, Ms. Guthrie was selected for a secondary inspection by Customs and Border Patrol; during that inspection, agents found 957 grams of cocaine concealed inside of a pair of sandals found in one of Ms. Guthrie's bags. (*Id.* at ¶¶ 2-3.) Ms. Guthrie was placed under arrest by the Department of Homeland Security. (*Id.* at ¶ 4.) After waiving her *Miranda* rights, Ms. Guthrie told officers that her plane ticket to the United States was purchased by a man named "Chris Edwards." (*Id.*) Homeland Security officers learned that Mr. Folkes's phone number and address were used during the purchase Ms. Guthrie's ticket. (*Id.*)

Ms. Guthrie told officers that "Chris Edwards" gave her a phone number to call when she arrived in the United States. (*Id.* at ¶ 5.) At the direction of Homeland Security officers, Ms. Guthrie called the phone number, which belonged to Ms. Jadusingh, and told Ms. Jadusingh that she had arrived at the airport. (*Id.* at ¶ 6.) When Ms. Jadusingh arrived at the airport to pick up Ms. Guthrie, officers observed Ms. Jadusingh take Ms. Guthrie's suitcase from her and place it in the trunk of the vehicle in which she arrived, at which point Ms. Jadusingh was also arrested. (*Id.*) Ms. Jadusingh told officers that she was instructed to pick up Ms. Guthrie by a man named "Chris." (*Id.* at ¶ 6.) At a subsequent interview with law

2

enforcement, Ms. Jadusingh allegedly stated that it was Mr. Folkes who had "put her up to this." (*Id.* at ¶ 9.) According to the government, after Mr. Folkes was arrested, Mr. Folkes admitted to his involvement in the conspiracy, and that he used the name "Chris Edwards." (*Id.* at ¶ 7.)

On May 23, 2018. Mr. Folkes, Ms. Jadusingh, and Ms. Guthrie were each indicted by a grand jury on charges of conspiracy to import cocaine and conspiracy to possess cocaine with intent to distribute. (*See* ECF No. 13, Indictment.) On December 27, 2018, Mr. Folkes appeared in person before the court to enter a plea of guilty on Count One. (*See* ECF No. 68, Dec. 27, 2018 Minute Entry.) Mr. Folkes entered his plea of guilty in connection with a plea agreement with the government. (*See* Dec. 27, 2018 Minute Entry for Status Conference.)

At his plea hearing, Mr. Folkes was represented by one of his former retained attorneys, Benjamin Heinrich, Esq. ("Mr. Heinrich").[2] After taking an oath to tell the truth under penalty of perjury, Mr. Folkes answered a series of questions from the court about, *inter alia*, his understanding of the charges, his rights, the count to which he was pleading guilty, and the penalties. (*See generally* ECF No. 108, Transcript of

---

[2] At that time, Mr. Folkes was represented by both Benjamin Heinrich and Jay N. Henrich, Esq., both of whom entered appearances on the docket. According to the transcript, Benjamin Heinrich appeared for Mr. Folkes at the change of plea hearing. Mr. Folkes's motion to withdraw his plea, however, states that only Jay Heinrich acted as counsel for Mr. Folkes.

3

Dec. 27, 2018 Change of Plea Hearing ("Plea Tr.").) Mr. Heinrich represented to the court that he discussed Mr. Folkes's decision to plead guilty with him "at length," and that Mr. Folkes understood the rights he would be waving by pleading guilty. (*Id.* at 12.) Mr. Folkes also confirmed that he discussed the matter of pleading guilty with Mr. Heinrich, and that he understood that he had a right to persist in his plea of not guilty and proceed to trial. (*Id.* at 15.) The court described to Mr. Folkes his rights, including that if he persisted in a plea of not guilty and went to trial, the government would have to prove his guilt beyond a reasonable doubt as to each element of the offense. (*Id.* at 16-18.) Mr. Folkes confirmed that he understood his rights. (*Id.*)

After signing the plea agreement in court, Mr. Folkes proceeded to plead guilty to Count One of the Indictment. (*Id.* at 26.) Mr. Folkes confirmed that he was entering the plea "voluntarily and of [his] own freewill," that nobody "threated [him] or forced [him] to plead guilty," and that, other than his plea agreement with the government, nobody made "any promises that ha[d] caused [him] to plead guilty." (*Id.*) Mr. Folkes then allocuted, in his own words, that:

> [O]n May 2nd, [he] made arrangements for Ms. Guthrie to come into the United States with a controlled substance. She agreed and [they] proceeded.

(*Id.* at 27.)

4

In response to questioning from the court, Mr. Folkes confirmed that he knew the agreement with Ms. Guthrie would involve bringing cocaine into the United States from Kingston, Jamaica through John F. Kennedy International Airport. (*Id.* at 27-28.) The court found that "based on the information" provided during the hearing, Mr. Folkes was "acting voluntarily, that [he] fully underst[ood] [his] rights and the consequences of [his] plea, and that there [was] a factual basis for [his] plea of guilty to Count One of the [I]ndictment," and, therefore, the court accepted his plea of guilty. (*Id.* at 32.)

Mr. Folkes has not yet been sentenced. Through his current counsel, Mr. Folkes filed the instant motion to withdraw his guilty plea on July 7, 2020. (ECF No. 160, Mot.) The government opposes his motion. (ECF No. 167, Response in Opposition ("Opp.").) The court's briefing schedule allowed for Mr. Folkes to file a reply brief, but he declined to do so. (*See* ECF No. 170, Letter as to Damien Folkes.) Thus, the motion to withdraw Mr. Folkes's guilty plea is fully submitted.

## **Legal Standard**

"A defendant may withdraw a plea of guilty . . . after the court accepts the plea, but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). "A defendant has no absolute right to withdraw his plea of guilty,"

5

*United States v. Williams*, 23 F.3d 629, 634 (2d Cir. 1994), and "[a] defendant who seeks to withdraw [a] plea bears the burden of showing that there are valid grounds for withdrawal." *United States v. Schmidt*, 373 F.3d 100, 102 (2d Cir. 2004). "The standard for withdrawing a guilty plea is stringent because 'society has a strong interest in the finality of guilty pleas, and allowing withdrawal of pleas not only undermines confidence in the integrity of our judicial procedures, but also increases the volume of judicial work, and delays and impairs the orderly administration of justice.'" *Id.* at 103 (quoting *United States v. Maher*, 108 F.3d 1513, 1529 (2d Cir. 1997)).

"In general, to determine whether the defendant has shown a 'fair and just reason' to justify withdrawal [of a plea], a district court considers, *inter alia*: (1) whether the defendant has asserted his or her legal innocence in the motion to withdraw the guilty plea; (2) the amount of time that has elapsed between the plea and the motion (the longer the elapsed time, the less likely withdrawal would be fair and just); and (3) whether the government would be prejudiced by a withdrawal of the plea." *Schmidt*, 373 F.3d at 102-03. A fourth factor courts may also "consider [is] whether the defendant 'has raised a significant question about the voluntariness of the original plea.'" *United States v. Albarran*, 943 F.3d 106, 117 (2d Cir. 2019) (quoting *Schmidt*, 373 F.3d at 103).

6

"A motion to withdraw a guilty plea may be denied without a hearing where the defendant's allegations 'merely contradict the record,' are 'inherently incredible,' or are 'simply conclusory.'" *United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997) (quoting *United States v. Gonzalez*, 970 F.2d 1095, 1100 (2d Cir.1992)).

## **Discussion**

Mr. Folkes has not requested a hearing, nor has he presented any evidence that would require a hearing. Consequently, the court will decide this motion based on the parties' submissions. *See Gonzalez*, 970 F.2d at 1100 ("[T]he defendant must present some significant questions concerning the voluntariness or general validity of the plea to justify an evidentiary hearing.").

In deciding whether to grant Mr. Folkes's motion to withdraw his guilty plea, the court will consider each of the four factors articulated by the Second Circuit for consideration of such a motion. *See, e.g.*, *Albarran*, 943 F.3d at 117; *Schmidt*, 373 F.3d at 103.

I. **Innocence**

According to Mr. Folkes's motion, contrary to his sworn statements at his plea hearing, Mr. Folkes now "asserts that he is not guilty of the charges in the [I]ndictment, and that he did not conspire with others to import narcotics into

7

the United States." (Mot. at 2-3.) Because this assertion is unsupported by an accompanying affidavit or other evidence, the court must reject it, because the Second Circuit "require[s] defendants to provide evidence supporting a claim of innocence." *United States v. Lam Peralta*, 792 F. App'x 68, 70 (2d Cir. 2019) (summary order) (citing *United States v. Hirsch*, 239 F.3d 221, 225 (2d Cir. 2001)).

Moreover, Mr. Folkes's assertion is directly contradicted by Mr. Folkes's prior sworn statements, which were made under oath at his plea hearing. Under penalty of perjury, Mr. Folkes allocuted unequivocally that he "made arrangements for Ms. Guthrie to come into the United States with a controlled substance." (Plea Tr. at 27.) Mr. Folkes's unsupported motion is also directly contradicted by statements made under oath by Ms. Guthrie. At her plea hearing, Ms. Guthrie stated that she "met Chris Edwards," whom she later learned was "Damien Folkes, through a friend." (ECF No. 95, Transcript of Jan. 15, 2019 Change of Plea Hearing, at 43.) Ms. Guthrie stated that Mr. Folkes "offered to buy a ticket to the United States." (*Id.* at 43-44.) She further allocuted that Mr. Folkes "asked [her] to take some shoes for him and give them to somebody by the name of 'Rash,' who was going to pick [her] up at the airport." (*Id.* at 44.) According to Ms. Guthrie, "even though [Mr. Folkes] didn't say the[re] were drugs in the shoes, [she] knew there was a high

8

probability that there were drugs in them and [she] deliberately did not try to inspect them or see if they had drugs." (*Id.*)

The foregoing statements describing Mr. Folkes's guilt were statements made under oath by two individuals, including by Mr. Folkes himself. Both Mr. Folkes and Ms. Guthrie made these statements while represented by counsel, and both individuals represented to the court that they were acting voluntarily. "Conclusory claims of innocence that leave a court guessing when a defendant is being truthful are inadequate to support withdrawal." *United States v. Gonzalez*, 647 F.3d 41, 54 (2d Cir. 2011); *see also Torres*, 129 F.3d at 716 (no evidentiary hearing required on motion to withdraw plea where the "allegations merely contradicted the record").

Accordingly, Mr. Folkes's sudden contention of innocence, made in a motion without the support of a sworn statement, does not weigh in favor of granting his motion. *See United States v. Baum*, 380 F. Supp. 2d 187, 205 (S.D.N.Y. 2005) ("the claim of innocence here was an exceedingly weak one" where "it was conclusory, unsupported by evidence, and contradicted defendant's statements at the time of the plea").

## II. Delay

Nearly 15 months passed between Mr. Folkes's guilty plea hearing on December 27, 2018 and the status conference at which Mr. Folkes first advised the court of his desire to

9

withdraw his plea.  (*See* March 5, 2020 Minute Entry for Status Conference.)  Mr. Folkes argues that "[d]uring the time period in between . . ., [he] sought to withdraw his plea, but his prior counsel decline[d] to do so."  (Mot. at 3.)  Again, Mr. Folkes's contention is made without the support of an affidavit or any other evidence.  After Mr. Heinrich represented Mr. Folkes at his guilty plea hearing, a new attorney, Vinoo P. Varghese, Esq. ("Mr. Varghese"), appeared to represent Mr. Folkes on November 11, 2019.  (*See* ECF No. 123, Notice of Attorney Appearance.)  Thus, even if the court were to assume that Mr. Heinrich refused to file a motion to withdraw Mr. Folkes's plea, Mr. Folkes still did not state his desire to withdraw his plea for nearly another four months after a new attorney appeared.[3]

     Accordingly, this factor weighs slightly against granting Mr. Folkes's motion.  *See United States v. Deacon*, 413 F. App'x 347, 350 (2d Cir. 2011) (summary order) ("no abuse of discretion in the district court's denial" of motion to withdraw plea "submitted five months later").

---

[3] At the March 5, 2020 status conference, Mr. Varghese was relieved and replaced by Sabrina Shroff, Esq. ("Ms. Shroff").  (*See* March 5, 2020 Minute Entry for Status Conference.)  Ms. Shroff is the attorney who submitted the present motion to withdraw Mr. Folkes's guilty plea.

10

### III. Prejudice to the Government

The government argues that the passage of time would negatively impact its case against Mr. Folkes, if Mr. Folkes were to now proceed to trial. (Opp. at 13.) Mr. Folkes argues that the government will not be prejudiced by the withdrawal of his plea, because there is little risk of the government having difficulty in securing the evidence it needs because much of it is digital, and because Mr. Folkes's trial could occur along with Ms. Jadusingh's trial, which is scheduled for October 2020. (Mot. at 3.) The government notes that Ms. Jadusingh's trial has been delayed, not at the request of the government, but rather because of an assault Ms. Jadusingh suffered while incarcerated, and due to the COVID-19 pandemic. (Opp. at 3.)

"The [g]overnment is not required to show prejudice when opposing a defendant's motion to withdraw a guilty plea where the defendant has shown no sufficient grounds for permitting withdrawal; however, the presence or absence of such prejudice may be considered by the district court in exercising its discretion." *Gonzalez*, 970 F.2d at 1100. Here, the court agrees with Mr. Folkes that the prejudice to the government would be fairly minimal. This is not a factually complex case. There are relatively few witnesses, and much of the key evidence is preserved, including Ms. Jadusingh's first interview with law enforcement, which was recorded. Though a trial for both Mr.

11

Folkes and Ms. Jadusingh, who are married, could implicate issues regarding marital privilege, it is not unprecedented for spouses to be tried together. *See United States v. Sasso*, 78 F.R.D. 292, 294 (S.D.N.Y. 1977) (spouse was "not entitled to a severance merely because she would rather not testify against her husband at a joint trial"). Moreover, the marital privilege may be vitiated by the crime-fraud exception. *See United States v. Estes*, 793 F.2d 465, 468 (2d Cir. 1986) (recognizing "the 'partnership in crime' exception to the confidential [marital] communication privilege").

The government would surely prefer to prepare for a trial against only one defendant. But the fact that it must prepare for a trial in either event lessens the amount of prejudice it would face in having to prepare for a trial against Mr. Folkes. Accordingly, this factor does not weigh against Mr. Folkes's motion.

## IV. Voluntariness of Plea

Finally, Mr. Folkes argues that his plea was not knowing and voluntary, but rather, it "resulted from misadvise, a fundamental misunderstanding, and pressure from his then counsel." (Mot. at 4.) Mr. Folkes contends that Mr. "Heinrich, who did not believe trial was a wise option for Mr. Folkes, failed to tell Mr. Folkes that, as a defendant, he had the right to proceed to trial even if his attorney was of the opinion that

12

trial was ill-advised." (*Id.* at 1.) "Mr. Folkes instead was told that only a guilty plea would [be] the only recourse that would save his wife (a co-defendant)." (*Id.*) Although the speaker of these hearsay statements is not identified in Mr. Folkes's motion, the court will assume that Mr. Folkes is claiming that he was told this by his defense counsel at the time of his plea.

Mr. Folkes has provided no support for these contentions, which are contradicted by his own prior sworn statements. At his plea hearing, the court advised Mr. Folkes that he had a right to maintain his plea of not guilty, and that if he did, he "would have the right under the United States Constitution and laws to a speedy and public trial by a jury, with the assistance of [his] attorney, on the charges contained in the [I]ndictment." (Plea Tr. at 15-16.) Mr. Folkes confirmed that he understood. (*Id.* at 16.) The court further advised that at trial, Mr. Folkes "would be presumed to be innocent and the [g]overnment would have to overcome that presumption and prove [he was] guilty beyond a reasonable doubt as to each and every element of the offense charged in the [I]ndictment." (*Id.*) Again, Mr. Folkes stated under oath that he understood. (*Id.*) The court also asked Mr. Folkes if he was "satisfied with [his] attorney," and he confirmed that he was. (*Id.* at 13.) And the court asked whether threats or promises

13

were made "that ha[d] caused [him] to plead guilty," to which Mr. Folkes said, "No, Your Honor." (*Id.* at 26.)

Based on Mr. Folkes's statements and demeanor at the plea hearing, the court found that Mr. Folkes was "acting voluntarily, that [he] fully underst[ood] [his] rights and the consequences of [his] plea, and that there [was] a factual basis for [his] plea of guilty to Count One of the [I]ndictment . . . ." (*Id.* at 32.) Although Mr. Folkes now asserts that his plea was based on a misunderstanding of his rights, "the record in this case belies his contention." *Lam Peralta*, 792 F. App'x at 69. Mr. Folkes stated under oath that he was satisfied with his attorney and that he understood his right to proceed to trial.

Accordingly, the court finds, as it did at the plea hearing, that Mr. Folkes entered his plea knowingly and voluntarily.

\*   \*   \*

Any allegation that a defendant was coerced into pleading guilty when that defendant was not guilty of the crime charged is a serious allegation. Binding case law, however, makes clear that a defendant does not have an absolute right to withdraw a guilty plea. In order to withdraw a plea, a defendant must provide the court with more than conclusory statements in a motion. Mr. Folkes has not stated under oath

14

that he is not guilty of the offense to which he pleaded guilty under oath.  Mr. Folkes has proffered only unsupported contentions that are contradicted by his prior sworn statements.  The court is therefore satisfied that Mr. Folkes was telling the truth in December 2018, and that he is indeed guilty of the crime to which he pleaded guilty.

## Conclusion

For the reasons set forth above, Mr. Folkes's motion to withdraw his guilty plea is respectfully DENIED.

**SO ORDERED.**

Dated:     Brooklyn, New York
           August 10, 2020

                                          /s/
                              Hon. Kiyo A. Matsumoto
                              United States District Judge

15