UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X
DAMIEN FOLKES,

        *Petitioner*,

  v.

UNITED STATES OF AMERICA,

        *Respondent*.

---------------------------------X

**<u>MEMORANDUM & ORDER</u>**

20-cv-5850 (KAM)
18-cr-257 (KAM)

**KIYO A. MATSUMOTO, United States District Judge:**

       Damien Folkes ("Mr. Folkes") is currently serving a 29-month prison sentence after pleading guilty to a conspiracy to import cocaine in violation of 21 U.S.C. §§ 960(b)(3) and 963.  Mr. Folkes filed a petition to vacate his conviction pursuant to 28 U.S.C. § 2255 ("Section 2255").  (ECF No. 195.)[1] For the reasons set forth below, Mr. Folkes's petition is respectfully DENIED.[2]

## <u>Background</u>

       The court assumes familiarity with the crime charged against Mr. Folkes, which was recounted in the court's prior orders.  In summary, in May 2018, Mr. Folkes's co-defendant,

---

[1] All citations to docket entries in this Memorandum and Order reference the docket in Mr. Folkes's criminal case, 18-cr-257.

[2] Mr. Folkes also filed a motion to stay the enforcement of the judgment of conviction against him until the court issued its decision on his Section 2255 petition.  (ECF No. 217.)  For reasons that will be discussed later in this Memorandum and Order, that motion is likewise DENIED.

Tassana Guthrie ("Ms. Guthrie"), took a flight from Kingston, Jamaica to John F. Kennedy International Airport ("JFK") in Queens, New York.  (ECF No. 1, Complaint, at ¶ 1.)  Upon her arrival, United States Customs and Border Patrol found a substance that was later determined to be cocaine concealed inside of a pair of sandals in one of Ms. Guthrie's bags.  (*Id.* at ¶¶ 2-3.)  Ms. Guthrie told officers that her plane ticket to the United States was purchased by a man named "Chris Edwards," who was later determined to be Mr. Folkes.  (*Id.* at ¶ 4.)  United States Department of Homeland Security officers learned that Mr. Folkes's phone number and address were used during the purchase of Ms. Guthrie's plane ticket.  (*Id.*)

Subsequently, with the assistance of Ms. Guthrie, Homeland Security officers observed a controlled pickup of her suitcase, and arrested Rasheda Jadusingh ("Ms. Jadusingh")[3] when she arrived at JFK to pick up Ms. Guthrie.  (*Id.* at ¶ 6.)  Ms. Jadusingh told officers that she was instructed to pick up Ms. Guthrie by a man named "Chris."  (*Id.* at ¶ 6.)  At a subsequent interview with law enforcement, Ms. Jadusingh allegedly stated that it was Mr. Folkes who "put her up to this." (*Id.* at ¶ 9.)  According to the government, after Mr. Folkes was arrested, Mr.

---

[3] Mr. Folkes and Ms. Jadusingh are married.

Folkes admitted to his involvement in the conspiracy, and admitted that he used the name "Chris Edwards."  (*Id.* at ¶ 7.)

## I.   The Indictment and Guilty Plea

On May 3, 2018, Mr. Folkes made an initial appearance before Magistrate Judge Marilyn D. Go, represented by his first, court-appointed attorney, Mitchell Golub, Esq. ("Mr. Golub"). (*See* ECF No. 5, Minute Entry.)  During the appearance before Magistrate Judge Go, Mr. Folkes was arraigned, and he waived his right to a preliminary hearing.  (*Id.*)  On May 23, 2018, Mr. Folkes, Ms. Guthrie, and Ms. Jadusingh were each indicted by a grand jury on charges of conspiracy to import cocaine and conspiracy to possess cocaine with intent to distribute.  (*See* ECF No. 13, Indictment.)[4]

On December 27, 2018, Mr. Folkes appeared before the undersigned to enter a plea of guilty to Count One of the Indictment, conspiracy to import cocaine.  (*See* ECF No. 68, Minute Entry.)  Mr. Folkes entered his plea of guilty in connection with a plea agreement with the government.  At the hearing, Mr. Folkes was represented by one of his former retained attorneys, Benjamin Heinrich, Esq. ("Mr. Heinrich"). After taking an oath to tell the truth under penalty of perjury, Mr. Folkes answered a series of questions under oath from the

---

[4] Ms. Guthrie later pleaded guilty.  Ms. Jadusingh pleaded not guilty and is scheduled to go to trial in May 2021.

court about, *inter alia*, his understanding of the charges, his rights, his understanding of the count to which he was pleading guilty, the voluntariness of his plea, and his understanding of the possible penalties.  (*See generally* ECF No. 108, Transcript of Dec. 27, 2018 Change of Plea Hearing ("Plea Tr.").)  Mr. Heinrich represented to the court that he discussed Mr. Folkes's decision to plead guilty with him "at length," and that Mr. Folkes understood the rights he would be waiving by pleading guilty.  (*Id.* at 12.)  Mr. Folkes also confirmed that he discussed the matter of pleading guilty with Mr. Heinrich, and that he understood that he had a right to persist in his plea of not guilty and proceed to trial.  (*Id.* at 15.)  The court reviewed with Mr. Folkes his rights, including that if he persisted in a plea of not guilty and went to trial, the government would have to prove his guilt beyond a reasonable doubt as to each element of the offense.  (*Id.* at 16-18.)  Mr. Folkes confirmed, while under oath, that he understood his rights.  (*Id.*)

After signing the plea agreement in court, Mr. Folkes proceeded to plead guilty to Count One of the Indictment.  (*Id.* at 26.)  Mr. Folkes confirmed that he was entering the plea "voluntarily and of [his] own freewill," that nobody "threated [him] or forced [him] to plead guilty," and that, other than his plea agreement with the government, nobody made "any promises

4

that ha[d] caused [him] to plead guilty." (*Id.*)  Mr. Folkes

then allocuted, in his own words, that:

> [O]n May 2nd, [he] made arrangements for Ms.
> Guthrie to come into the United States with
> a controlled substance.  She agreed and
> [they] proceeded.

(*Id.* at 27.)

In response to questioning from the court, Mr. Folkes

confirmed that he knew the agreement with Ms. Guthrie would

involve bringing cocaine into the United States from Kingston,

Jamaica through JFK.  (*Id.* at 27-28.)  The court found that

"based on the information" provided during the hearing, Mr.

Folkes was "acting voluntarily, that [he] fully underst[ood]

[his] rights and the consequences of [his] plea, and that there

[was] a factual basis for [his] plea of guilty to Count One of

the [I]ndictment." (*Id.* at 32.)  Therefore, the court accepted

his plea of guilty.  (*Id.*)

## II. Motion to Withdraw Guilty Plea

On July 7, 2020, Mr. Folkes, acting through a new

court-appointed attorney, Sabrina Shroff, Esq. ("Ms. Shroff"),

filed a motion seeking to withdraw his guilty plea.  (ECF No.

160, Motion to Withdraw Guilty Plea.)  Mr. Folkes's motion to

withdraw his guilty plea alleged that he was not guilty, and that

Mr. Heinrich had "pressure[d]" him to enter a plea of guilty to

spare his wife, Ms. Jadusingh, of criminal liability.  (ECF No.

173, Memorandum and Order ("Order Denying Mot. to Withdraw"), at 7, 12.)  This court denied the motion, largely because Mr. Folkes's unsupported contentions were contradicted by the sworn statements Mr. Folkes made at his guilty plea hearing, including his knowing and voluntary admission that he was guilty, that Mr. Heinrich had fully advised him of his rights, and that he understood his right to go to trial.  (*See generally id.*)

**III. Sentencing**

In August 2020, Mr. Folkes retained a new attorney, Nicholas Kaizer, Esq. ("Mr. Kaizer"), who represented Mr. Folkes at sentencing.  (*See* ECF No. 176, Notice of Appearance.) Sentencing was held in person before the undersigned on October 13, 2020.  (ECF No. 185, Minute Entry.)  At sentencing, the court independently calculated the advisory range under the United Sentencing Guidelines as calling for a sentence of 63 to 78 months in prison.  The court sentenced Mr. Folkes to 29 months in prison, to be followed by three years of supervised release with special conditions.  (ECF No. 186, Judgment.)  The court ordered Mr. Folkes to surrender on January 14, 2021. (*Id.*)

On December 28, 2020, Mr. Folkes filed a motion to delay his surrender date, citing a scheduled appearance in Oklahoma state court for a separate criminal proceeding.  (ECF No. 208, Motion to Modify Conditions.)  The government opposed

6

the motion, and represented that it could make Mr. Folkes

available for his court date in Oklahoma after he was in

custody.  (ECF No. 213, Response in Opposition.)  The court

denied the motion (Jan. 4, 2021 Dkt. Order), and Mr. Folkes

surrendered and began serving his custodial sentence on January

14, 2021 (ECF No. 216, Letter Confirmation).

### IV.  Procedural History Regarding the Instant Petition

Shortly after Mr. Folkes was sentenced, the court

received several *pro se* submissions from Mr. Folkes, seeking to

vacate his conviction on the grounds of ineffective assistance

of counsel, denial of due process, and fraud.  (ECF Nos. 188,

189, 191.)  In response to the court's order, Mr. Kaizer filed a

letter indicating that he would not continue to represent Mr.

Folkes post-sentencing, and that Mr. Folkes had informed him

that "he d[id] not require private counsel nor CJA counsel to

represent him."  (ECF No. 190, Letter.)

On October 28, 2020, the court ordered that Mr. Folkes

"inform the court within 30 days . . . whether he consent[ed] to

having his multiple filings construed as a Section 2255

petition."  (ECF No. 192, Order, at 4.)  The Order advised Mr.

Folkes that "in general, criminal defendants only have <u>one</u>

opportunity to file a Section 2255 petition."  (*Id.* (underline

in original).)

On November 25, 2020, Mr. Folkes filed papers with the court that appeared to consolidate all of the purported grounds upon which he sought to vacate his conviction into a single filing. (ECF No. 195, Petition ("Pet.").)  The court ordered that the filing be construed as a petition under Section 2255, and ordered that the lawyers named in it, and the government, respond to it.  (ECF No. 197, Amended Order to Show Cause.)  Mr. Golub (ECF No. 198 ("Golub Aff.")), Mr. Kaizer (ECF No. 200 ("Kaizer Aff.")), Ms. Shroff (ECF No. 204 ("Shroff Decl.")), and Mr. Heinrich (ECF No. 205 ("Heinrich Aff.")) each filed affidavits or declarations under penalty of perjury in response to the petition filed by Mr. Folkes.  Mr. Folkes filed sworn affidavits in response to each of his former counsel's filings. (ECF Nos. 207, 209, 210, 211.)  The government opposed Mr. Folkes's petition (ECF No. 212, Memorandum in Opposition ("Opp.")), and Mr. Folkes filed a reply (ECF No. 219, Reply).

### Standard of Review

"A prisoner in custody under sentence of a [federal court] claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, . . . or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."  28

U.S.C. § 2255(a).  The court "shall vacate and set the judgment aside" if the court finds that "there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." *Id.* § 2255(b).

To respect the finality of criminal convictions, "a collateral attack on a final judgment in a federal criminal case is generally available under [Section] 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a 'fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

## Discussion

### I.   Summary of Mr. Folkes's Alleged Grounds for Relief

The grounds for relief Mr. Folkes listed in his petition were: ineffective assistance of counsel, "[u]ndue influence" of counsel, denial of his due process rights, and "[e]xtrinsic fraud." (Pet. at 3.)

Mr. Folkes alleges that, upon his arrest at the airport, he was questioned by federal agents without being provided a *Miranda* warning. (*Id*. at 4-5.) Mr. Folkes alleges that he asked for an attorney, but was told he could not leave

the interrogation until he told the agents "what they wanted to hear." (*Id.*)

Next, Mr. Folkes alleges that, in advance of his initial appearance, his first attorney, Mr. Golub, "did not explain to [him] [his] rights with regard[] to [a] preliminary hearing," and that Mr. Golub waived his right to such a hearing without his permission. (*Id.* at 5.) Mr. Folkes alleges that Mr. Golub told him that "the judge would lock [him] up if [he] did not sign the preliminary hearing waiver." (*Id.*) Mr. Folkes further alleges that Mr. Golub did not prepare a bail package for him. (*Id.*) Mr. Folkes states that subsequently, every time he spoke to Mr. Golub, Mr. Golub "told [him] [he] had no chance of going to trial and winning," and that he "needed to accept a plea deal." (*Id.*) Mr. Folkes lists several issues that Mr. Golub never raised on his behalf, including his right to counsel during his interrogation. (*Id.* at 6.)

Mr. Folkes alleges that Mr. Heinrich, who represented Mr. Folkes at his guilty plea hearing, told him to accept the government's plea offer without consulting him about it. (*Id.*) Mr. Folkes states that Mr. Heinrich never reviewed the agreement with him, until 15 minutes before Mr. Folkes signed it in court. (*Id.* at 7.)

Mr. Folkes next contends that in connection with his motion to withdraw his guilty plea, he wrote a letter explaining

10

the reasons his guilty plea was invalid, including that Mr.
Golub waived his preliminary rights and that Mr. Heinrich was
ineffective.  (*Id.* at 8.)  Mr. Folkes alleges that Ms. Shroff
refused to submit this letter to the court in support of his
motion to withdraw his guilty plea, which resulted in the court
finding that there were insufficient grounds to grant his
motion.  (*Id.*)

        Next, Mr. Folkes points out that the pre-sentence
investigation report prepared by the United States Probation
Department listed the date of his guilty plea as December 27,
2018, but the government's sentencing submission stated that his
guilty plea occurred on December 7, 2018.  (*Id.* at 9.)  He also
references "documents submitted in [Ms. Guthrie's] record" that
he avers are "being overlooked."  (*Id.*)  The document to which
he refers is apparently a summary of Ms. Guthrie's initial
interrogation, prepared by law enforcement, which summarizes her
statements that she was traveling alone for vacation, and that
all of the luggage in her possession belonged to her.  (*Id.*, Ex.
3.)  Mr. Folkes also alleges that "no documents have been
furnished" from the interrogations at the airport, in violation
of the Supreme Court's holding in *Brady v. Maryland.*  (*Id.* at 9-
10.)

        Lastly, Mr. Folkes alleges that he told Mr. Kaizer,
who represented Mr. Folkes at sentencing, that Mr. Kaizer should

not send a letter to the court correcting certain information contained in the sentencing submission filed on behalf of Mr. Folkes, but that Mr. Kaizer sent the letter anyway.  (*Id.* at 10.)

## II.  Preliminary Considerations

The court begins its discussion of Mr. Folkes's claims by addressing the threshold issues of (1) whether the waiver in Mr. Folkes's plea agreement bars any of his claims, (2) whether Mr. Folkes's failure to file a direct appeal bars any of his claims, and (3) whether an evidentiary hearing is necessary.

### A. Waiver

Mr. Folkes agreed in his plea agreement to waive his right to appeal or collaterally attack his conviction and sentence, including under Section 2255 but excluding claims of ineffective assistance of counsel, in the event this court imposed a prison sentence of 63 months or less, which the court ultimately did.  A threshold question, therefore, is whether Mr. Folkes's waiver bars any of the claims raised in his petition.

"A defendant's knowing and voluntary waiver of the right to appeal or collaterally attack his conviction and/or sentence is enforceable."  *Sanford v. United States*, 841 F.3d 578, 580 (2d Cir. 2016).  A waiver is knowing if the "defendant fully understood the potential consequences of his waiver."

*United States v. Monzon*, 359 F.3d 110, 116 (2d Cir. 2004).
"[E]xceptions to the presumption of the enforceability of a
waiver . . . occupy a very circumscribed area of [the Second
Circuit's] jurisprudence." *Sanford*, 841 F.3d at 580 (quoting
*United States v. Gomez-Perez*, 215 F.3d 315, 319 (2d Cir. 2000)).

    Mr. Folkes's plea agreement stated that he "agree[d]
not to file an appeal or otherwise challenge, by petition
pursuant to [Section] 2255 or any other provision, the
conviction or sentence in the event that the court impose[d] a
term of imprisonment of 63 months or below." (Pet., Ex. 1, Plea
Agreement, at 3.)  It further stated that the waiver did not
preclude Mr. Folkes "from raising a claim of ineffective
assistance of counsel in an appropriate forum." (*Id.*)  By
signing the agreement, Mr. Folkes represented that he had "read
the entire agreement and discussed it with [his] attorney" and
"underst[oo]d all of its terms and [was] entering into it
knowingly and voluntarily." (Plea Agreement at 6.)  Mr. Folkes
also represented under oath at his guilty plea hearing that he
understood the terms of the plea agreement, including the rights
he would be waiving by pleading guilty. (Plea Tr. at 12); *see*
*United States v. Hernandez*, 242 F.3d 110, 112 (2d Cir. 2001)
("[T]he district court was entitled to rely upon the defendant's
sworn statements, made in open court . . . that he understood
the consequences of his plea . . . .").

The court finds that, based on Mr. Folkes's statements and conduct at his guilty plea hearing, the waiver was made knowingly and voluntarily, with an understanding of what it meant.  Accordingly, all of the claims raised in the instant petition are barred by the waiver, except for his claims of ineffective assistant of counsel.

### B. Failure to Appeal

Mr. Folkes did not file a notice of appeal after judgment was entered against him.  Though a petition under Section 2255 may be filed simultaneously with a direct appeal, a "collateral attack is not a substitute for direct appeal and petitioners are therefore generally required to exhaust direct appeal before bringing a petition [pursuant to Section] 2255." *United States v. Vilar*, 645 F.3d 543, 548 (2d Cir. 2011) (quoting *United States v. Dukes*, 727 F.2d 34, 41 (2d Cir. 1984)).

A petitioner has procedurally forfeited any claim that was not timely filed on direct appeal, unless he can show "(1) cause for failing to raise the issue, and prejudice resulting therefrom; or (2) actual innocence." *Sapia v. United States*, 433 F.3d 212, 216 (2d Cir. 2005) (quoting *Rosario v. United States*, 164 F.3d 729, 732 (2d Cir. 1998)).  Mr. Folkes does not explain why he did not file an appeal.  Moreover, Mr. Folkes does not attempt to show actual innocence, nor is he able to.

*See Bousley v. United States*, 523 U.S. 614, 623-24 (1998) ("Actual innocence means factual innocence, not mere legal insufficiency."); *see also Schlup v. Delo*, 513 U.S. 298, 327 (1995) (actual innocence requires that "that it is more likely than not that no reasonable juror would have convicted him"). The procedural default for not filing a timely appeal does not apply to claims of ineffective assistance of counsel. *See Massaro v. United States*, 538 U.S. 500, 504-05 (2003).

Because Mr. Folkes failed to file a notice of appeal, all of his claims, other than those of ineffective assistance of counsel, are barred.

C. Evidentiary Hearing

Mr. Folkes did not request an evidentiary hearing, nor has he presented any evidence that would require a hearing. Consequently, the court will decide his petition based on the parties' submissions.[5]

---

[5] "In ruling on a motion under [Section] 2255, the district court is required to hold a hearing '[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013) (quoting 28 U.S.C. § 2255(b)). Even if a hearing is warranted, it is "within the district court's discretion to determine the scope and nature of a hearing." *Raysor v. United States*, 647 F.3d 491, 494 (2d Cir. 2011) (citing *Chang v. United States*, 250 F.3d 79, 85-86 (2d Cir. 2001)). A full testimonial hearing is not necessary in all cases. *Id*. Here, the court has received statements under penalty of perjury from all of the relevant lawyers, and a full hearing would be redundant of the evidence already before the court.

### III. Merits of Mr. Folkes's Alleged Grounds for Relief

As discussed above, all of Mr. Folkes's claims, except for his claims of ineffective assistance of counsel, are barred by the waiver in his plea agreement and because he did not file an appeal.  In any event, for the reasons that follow, all of Mr. Folkes's claims are without merit.

#### A. *Miranda* Warning

Mr. Folkes alleges that, when he was first interrogated by law enforcement at JFK, he was not warned of his *Miranda* rights, and despite his request for an attorney, he was told he "would not be able to leave until [he] told [the officers] what they wanted to hear." (Pet. at 4.)  This claim is procedurally barred by both the waiver in Mr. Folkes's plea agreement and by his failure to file an appeal.  But even if it were not barred, it would be denied.

Criminal suspects are entitled under the Constitution to be advised of their rights to remain silent and to an attorney before law enforcement conducts a "custodial interrogation" of the suspect. *Rhode Island v. Innis*, 446 U.S. 291, 297 (1980) (citing *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)).  It is well-established that if a suspect makes statements that are voluntarily, a *Miranda* warning is not required for those statements to be admissible against the suspect. *See United States v. Badr*, 604 F.Supp 569, 578-79

(E.D.N.Y. 1985) ("Volunteered statements of any kind and spontaneous, unprovoked, incriminating statements are not barred by the Fifth Amendment.").

Mr. Folkes's allegation that he was not advised of his *Miranda* rights is directly contradicted by a waiver he signed on the date of the interrogation.  The waiver stated that Mr. Folkes had a "right to remain silent," "the right to consult an attorney before making any statement or answering any question," "the right to have an attorney present with [him] during questioning," that an attorney would "be appointed for [him]" if he could not afford one, and that if he decided to answer questions, he had "the right to stop the questioning at any time, or to stop the questioning for the purposes of consulting an attorney."  (Opp., Ex. B.)  Mr. Folkes signed the waiver directly underneath an acknowledgement that he fully understood his rights, and that he waived them "freely and voluntarily, without threat or intimidation and without any promise of reward or immunity."  (*Id.*)  Next to his signature on the waiver, Mr. Folkes listed the time that he was taken into custody as 4:37 p.m., and he signed the document at 5:12 p.m. on the same day. (*Id.*)

In his petition, Mr. Folkes acknowledges that he signed the waiver, and he does not proffer any reason to suggest that the waiver was not knowing and voluntary.  (*See* Pet. at 4.)

Thus, it is clear that Mr. Folkes was advised of his rights shortly after he was taken into custody, and any statements that he made to law enforcement during that interrogation were voluntary, with a full understanding of his rights. Accordingly, Mr. Folkes's claim that his constitutional rights were violated during his interrogation is denied.

### B. Alleged *Brady* Violation

Mr. Folkes also alleges that "no documents have been furnished" from the interrogations or interviews at JFK, in violation of the Supreme Court's decision in *Brady v. Maryland*. (Pet. at 9-10.)  Again, this claim is barred by the waiver, and because it was not first raised on appeal.  Nonetheless, it is without merit.

To prevail on a constitutional claim that the prosecution failed to turn over exculpatory evidence, Mr. Folkes must show "that the suppression by the prosecution of evidence favorable to [him] upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 83 (1963).  Such evidence is only material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *United States v. Bagley*, 473 U.S. 667, 682 (1985).  "A 'reasonable probability' is a

18

probability sufficient to undermine confidence in the outcome." *Id.*

Mr. Folkes broadly alleges that he did not receive "documentation regarding [] statements that were provided to [the Department of Homeland Security] or [Customs and Border Protection]" made by witnesses at JFK.  (Pet. at 9.)  First, Mr. Folkes clearly did receive at least one document related to Ms. Guthrie's interview with law enforcement, because he attached such a document as an exhibit to his petition (this exhibit will be discussed further below).  Mr. Folkes never specifies any particular documents that he did not receive, or how such evidence would be material under *Brady*.  *See Brady*, 373 U.S. at 83.  The government has represented that it "is unaware of any evidence that has not been disclosed to [Mr. Folkes] that is exculpatory within the meaning of *Brady* . . . and its progeny." (Opp. at 31.)

Because Mr. Folkes has not identified any particular evidence that was not turned over, and the government has represented that it is aware of no such evidence, Mr. Folkes's unsupported claim that he was denied due process because of the government's alleged failure to provide him with documents is denied.

19

C. <u>Date of Guilty Plea and "Overlooked" Evidence</u>

Without asserting any particular constitutional right
that was violated, Mr. Folkes raises two issues that the court
will address briefly, though both are barred and, in any event,
would not entitle him to any relief.

First, Mr. Folkes notes that his change of plea
hearing was held on December 27, 2018, but a document from the
government stated that the hearing was held on December 7, 2018.
(Pet. at 9 and Ex. 3.)  Mr. Folkes asks if it was "possible
. . . to plead guilty for the same case on two different
days[.]"  (*Id.*)  Mr. Folkes did not plead guilty on two
different days.  He did so once, on December 27, 2018.  (ECF No.
68, Minute Entry.)  The document that listed the date as
December 7 was the government's sentencing submission (Pet., Ex.
3; ECF No. 119), and the government concedes that this was a
"typographical error."  (Opp. at 31.)  This minor mistake does
not implicate Mr. Folkes's constitutional rights in any way, and
does not provide a ground for any form of relief.

Second, Mr. Folkes argues that "documents submitted in
[his] co-defendant's (Tassana Guthrie) record that show
acknowledgment" are "being overlooked."  (Pet. at 9.)  The
document related to Ms. Guthrie provided by Mr. Folkes is a
summary of Ms. Guthrie's interview with law enforcement at JFK,
which recounts that Ms. Guthrie initially stated that she was

traveling alone for vacation, and that everything in her bag belonged to her.  (Pet., Ex. 2.)  The summary then describes agents finding a substance inside a pair of sandals in her bag that tested positive for cocaine.  (*Id.*)  This summary merely reflects a statement by a co-conspirator in which she attempts to deny her own guilt.  Mr. Folkes was convicted of one count, conspiracy to import cocaine, so any agreement with Ms. Guthrie, plus an act in furtherance of the conspiracy, may appropriately be considered for purposes of his liability for the crime of conviction.  Ms. Guthrie subsequently told law enforcement that she brought the cocaine to the United States as part of an agreement with "Chris Edwards" (that is, Mr. Folkes), and Mr. Folkes also stated as much under oath at his guilty plea hearing.  Nothing about this document changes those facts.

Accordingly, both of these claims are denied.

D. Standard for Mr. Folkes's Ineffective Assistance of Counsel Claims

Mr. Folkes makes several arguments related to the quality of representation by his various attorneys.  Before addressing the merits of these arguments, the court will briefly recount the legal standard for claims of ineffective assistance of counsel.

Under the Sixth Amendment, criminal defendants have not just a right to counsel, but a right to "effective

assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970).  To prevail on a claim of ineffective assistance of counsel, a *habeas* petitioner must meet the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  "*Strickland*'s standard, although by no means insurmountable, is highly demanding." *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986). Under *Strickland*, a petitioner must show (1) that defense counsel's representation fell below an objective standard of reasonableness (the "performance prong"); and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" (the "prejudice prong"). *Pham v. United States*, 317 F.3d 178, 182 (2d Cir. 2003) (quoting *Strickland*, 466 U.S. at 688, 694). The petitioner bears the "burden of establishing both" that his counsel was deficient and that he was prejudiced. *United States v. Birkin*, 366 F.3d 95, 100 (2d Cir.2004) (citing *Strickland*, 466 U.S. at 687).  The court need not address both prongs if the petitioner makes an insufficient showing on either of them. *See Parker v. Ercole*, 666 F.3d 830, 834 (2d Cir. 2012).

For the reasons that follow, none of Mr. Folkes's claims regarding his former attorneys meet the highly demanding *Strickland* standard.

E. Allegations as to Mr. Golub

Mr. Folkes generally alleges that Mr. Golub, his first appointed lawyer, unduly influenced Mr. Folkes into waiving his right to a preliminary hearing, failed to prepare a bail package, and pressured him into accepting a plea deal because he believed that Mr. Folkes had no chance of being acquitted at trial. (*See* Pet. at 5-6.)

Mr. Golub denies Mr. Folkes's allegations, in an affirmation under penalty of perjury. Mr. Golub states that he "explain[ed] to Mr. Folkes his rights regarding a preliminary hearing." (Golub Aff. at ¶ 4.) Mr. Golub states that he advised Mr. Folkes that he could demand a hearing, but doing so "would likely result in the [g]overnment presenting the case to a Grand Jury sooner . . . and would eliminate the likelihood of negotiations with the [g]overnment prior to the filing of an indictment." (*Id.*) According to Mr. Golub, following this discussion, Mr. Folkes "agreed to waive a preliminary hearing." (*Id.*) Mr. Golub denies telling Mr. Folkes that the reason to waive the hearing was that the "judge would lock him up" unless he waived his right to a hearing. (*Id.*) Mr. Golub further states that he prepared a bail package, which was presented at a detention hearing before Chief Magistrate Judge Cheryl Pollack. (*Id.* at ¶ 5.) Mr. Golub denies telling Mr. Folkes that he had "no chance" at trial, and only discussed a possible plea deal

with him "as part of a broader discussion of options open" to Mr. Folkes.  (*Id.* at ¶¶ 7-8.)

Mr. Folkes and Mr. Golub thus dispute certain of the factual circumstances related to Mr. Golub's representation. This court has a "responsibility to actually make a credibility finding in each case, even absent objective evidence." *Purdy v. Zeldes*, 337 F.3d 253, 259 (2d Cir. 2003).  When "faced with self-serving allegations that are contradicted by a credible affirmation by a trial attorney, [the court] may choose to credit the attorney and dismiss the ineffective assistance of counsel claim without further hearings." *Batista v. United States*, No. 14-cv-895 (DLI), 2018 WL 1556880, at *6 (E.D.N.Y. Mar. 30, 2018) (quoting *Vargas v. United States*, No. 00-cv-2275 (SJ), 2007 WL 2246004, at *8 (E.D.N.Y. July 31, 2007)), *aff'd*, 792 F. App'x 134 (2d Cir. 2020).  In support of his petition, Mr. Folkes swore to his allegations before a notary, but the court is nonetheless inclined to credit Mr. Golub's statements, given the shifting representations Mr. Folkes has made to the court throughout this case—most notably, Mr. Folkes's statements during his guilty plea hearing, which he later attempted to recant in a motion to withdraw the plea.  *See Purdy*, 337 F.3d at 259 ("[I]n most circumstances a convicted felon's self-serving testimony is not likely to be credible.").

Moreover, Mr. Golub's decision to advise Mr. Folkes to waive a preliminary hearing under the circumstances of the case was reasonable, as was his advice regarding the potential benefits of accepting a plea offer.  The court finds that Mr. Folkes's claim that Mr. Golub exerted undue influence in connection with entering his guilty plea is not credible, because Mr. Folkes did not enter his plea until he was represented by difference counsel.

Further, Mr. Folkes's ineffective assistance claim regarding Mr. Golub fails under the second prong of *Strickland*, because Mr. Folkes has made no showing that more effective representation would have resulted in a different outcome.  Mr. Golub presented a bail package on behalf of Mr. Folkes, and Mr. Folkes was released on a bail package of $250,000 bond with four sureties (over the government's objection).  (*See* Opp. at 22.)  The ultimate outcome in this case, that Mr. Folkes was found guilty on Count One of the Indictment, was a result of Mr. Folkes's plea of guilty to that count.  Nothing related to Mr. Golub's representation in the early stages of the case would have changed that outcome.  Had Mr. Folkes requested a preliminary hearing, it likely would only have resulted in the government obtaining the Indictment sooner, exactly as Mr. Golub counseled.  Indeed, the government indicted Mr. Folkes on May

23, 2018, a mere 20 days after his initial appearance on May 3. (*See* ECF No. 5, Minute Entry; ECF No. 13, Indictment.)

Accordingly, Mr. Folkes's claims of ineffective assistance of counsel regarding Mr. Golub fail under both prongs of *Strickland*.   The claims are therefore denied.

F. <u>Allegations as to Mr. Heinrich</u>

Mr. Folkes argues that Mr. Heinrich, who represented Mr. Folkes when he entered his guilty plea, provided ineffective assistance of counsel by failing to fully explain the plea agreement to him.  (*See* Pet. at 7-8.)

Mr. Folkes's factual contentions are directly contradicted by statements made under penalty of perjury by Mr. Heinrich, and by Mr. Folkes during his plea hearing.  Mr. Heinrich states that he and Mr. Folkes "discussed and reviewed the plea at length on multiple occasions."  (Heinrich Aff. at ¶ 3.)  Unlike Mr. Folkes's vague allegations, Mr. Heinrich provides the court with the precise dates on which he discussed the plea agreement with Mr. Folkes.  (*See id.* at ¶¶ 3-4.)

The court credits Mr. Heinrich's account over Mr. Folkes's, but even if it did not, there is another person who acknowledged the sufficiency of Mr. Heinrich's advice under oath: Mr. Folkes himself.  At his guilty plea hearing, Mr. Folkes represented to the court that he discussed the terms of

the plea agreement with Mr. Heinrich, and that he was satisfied

with Mr. Heinrich's representation:

> THE COURT: Have you advised Mr. Folkes of the
> maximum and minimum sentence and fine that
> could be imposed as a result of Mr. Folkes'
> guilty plea?
>
> MR. HEINRICH: I have.
>
> THE COURT: And have you also advised him of the
> advisory nature of the sentencing guidelines and the
> statutory sentencing factors under 18 U.S. Code
> Section 3553?
>
> MR. HEINRICH: Yes.
>
> THE COURT: Mr. Folkes, as you know, you have the
> right to be represented by an attorney throughout all
> of these proceedings and I would like to ask you are
> you satisfied with your attorney?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Have you had an opportunity to discuss
> your case with your lawyer and your intended guilty
> plea?
>
> THE DEFENDANT: Yes.

(Plea Tr. at 13.)

Mr. Folkes's self-serving statements in his petition

are directly contradicted by his own prior statements, which

were made under oath.  After acknowledging that he was satisfied

with Mr. Heinrich's representation and that he had read and

understood the plea agreement, Mr. Folkes signed it; by doing

so, he further affirmed that he had "read the entire agreement

and discussed it with [his] attorney."  (Plea Agreement at 6.)

Accordingly, his claim of ineffective assistance of counsel regarding Mr. Heinrich is likewise denied.

### G. Allegations as to Ms. Shroff

Mr. Folkes alleges that Ms. Shroff, the attorney who submitted his motion to withdraw his guilty plea, failed to submit a letter to the court he wrote that explained why his plea was invalid. (*See* Pet. at 8.)  Ms. Shroff acknowledges the existence of the letter written by Mr. Folkes, and states that she incorporated facts from it into the motion that she filed on his behalf. (Shroff Decl. at ¶¶ 4-5.)  In an email that Mr. Folkes attached as an exhibit to his petition, Ms. Shroff told Mr. Folkes at the time of the motion that she could not use the letter because the court "had not invited a letter from [him]," and she asked him to go through the transcript of his guilty plea hearing and "mark what is not true and why" he made the aforementioned statements representing that his plea was being entered voluntarily. (Pet., Ex. 5.)

Mr. Folkes does not directly claim that Ms. Shroff was ineffective, but even if the court assumes that Mr. Folkes is attempting to bring an ineffective assistance of counsel claim as to Ms. Shroff, it is clear that such a claim would not rise to the level of constitutionally deficient performance under *Strickland*.  First, Ms. Shroff's decision to direct Mr. Folkes to focus on the voluntariness of his plea, rather than on the

other matters contained in the letter (which were some of the same grounds he is now raising in this petition), was objectively reasonable advice, given that the standard required for a court to allow a defendant to withdraw his guilty plea is focused on the voluntariness of the plea.

Second, the inclusion of Mr. Folkes's letter would not have changed the outcome. In denying Mr. Folkes's motion to withdraw his plea, the court noted that Mr. Folkes failed to submit any sworn statements to contradict the statements he made at his change of plea hearing. (*See* Order Denying Mot. to Withdraw at 8, 10.) The letter Mr. Folkes now claims Ms. Shroff should have submitted was not a sworn statement by Mr. Folkes. It merely recounted Mr. Folkes's version of the facts related to his representation by Mr. Heinrich, and Ms. Shroff incorporated those facts into the motion. For the same reasons explained in the court's Memorandum and Order denying the motion, the court would have denied the motion even if it had Mr. Folkes's letter before it at the time. The letter does not change the fact that Mr. Folkes represented under oath before the court that he understood the consequences of his plea, and that he was entering it voluntarily. He thus had no right to withdraw the plea.

Accordingly, Mr. Folkes's potential claim of ineffective assistance of counsel regarding Ms. Shroff is likewise denied.

H. <u>Allegations as to Mr. Kaizer</u>

In contrast to Mr. Folkes's complaint about Ms. Shroff's failure to send a letter, he avers that Mr. Kaizer, who represented him at sentencing, submitted a letter to the court that Mr. Folkes told him not to submit. (*See* Pet. at 10.) Again, it is not clear that Mr. Folkes meant to bring a claim of ineffective assistance of counsel regarding Mr. Kaizer, but if he did, it is without merit.

Mr. Kaizer contradicts Mr. Folkes's account, and states that Mr. Folkes did authorize him to submit the letter. (Kaizer Aff. at ¶ 4.) In any event, the sending of the letter does not come close to the standard for constitutionally defective assistance of counsel. The letter was sent by Mr. Kaizer to correct a statement made in the sentencing submission he filed on behalf of Mr. Folkes. (ECF No. 182, Letter.) In the sentencing submission, Mr. Kaizer represented that Mr. Folkes "never told counsel" who filed the motion to withdraw his guilty plea (Ms. Shroff) "that he was not guilty[.]" (*Id*.) Mr. Kaizer's letter clarified that, in fact, the motion had asserted that Mr. Folkes was "not guilty," and that Mr. Folkes received a

draft of the motion and agreed with it before Ms. Shroff filed it.  (*Id.*)

Submitting this letter was not deficient performance. On the contrary, to have failed to correct an inaccurate statement could have been deficient performance, and possibly sanctionable conduct.  Importantly, the letter did not alter the outcome.  That is, it did not affect the below-Guidelines sentence that the court ultimately imposed.

Accordingly, Mr. Folkes's potential claim regarding Mr. Kaizer fails under both prongs of *Strickland*.  The claim is therefore likewise denied.

## IV.  Motion to Stay Enforcement of Judgment

On the date of Mr. Folkes's surrender, January 14, 2021, the court received a document from Mr. Folkes seeking to stay the enforcement of the judgment while his Section 2255 petition was pending, pursuant to Federal Rule of Civil Procedure 62.  (ECF No. 217, Motion to Stay.)  Rule 62 governs stays applicable to civil money judgments pending appeal.  *See Moore v. Navillus Tile, Inc.*, No. 14-cv-8326 (CM), 2017 WL 4326537, at *1 (S.D.N.Y. Sept. 28, 2017).  It is inapplicable in the context of a criminal judgment.  Moreover, the court finds that there was no basis to stay the enforcement of Mr. Folkes's judgment of conviction pending the outcome of his petition.  *See Nkansah v. United States*, No. 08-cr-1234 (JSR), 2015 WL 8731914,

at *6 (S.D.N.Y. Dec. 14, 2015) ("finding no jurisdictional basis to stay his judgment of conviction" pending outcome of Section 2255 petition), *report and recommendation adopted*, 2016 WL 3223626 (S.D.N.Y. June 8, 2016).

Accordingly, the motion to stay is denied.

## Conclusion

For the reasons stated above, Mr. Folkes's Section 2255 petition is DENIED and dismissed in its entirety.  Mr. Folkes's claims, other than ineffective assistance of counsel, are procedurally barred by the waiver in his plea agreement, and by his failure to appeal.  On the merits, Mr. Folkes has failed to identify any valid grounds for relief.

Because Mr. Folkes has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue.  28 U.S.C. § 2253(c); *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); Rules Governing Section 2254 and 2255 Cases, Rule 11 ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.").  Mr. Folkes is advised that any appeal must be filed within 60 days of this Memorandum and Order.  Fed. R. App. P. 4(a)(1)(B); *Williams v. United States*, 984 F.2d 28, 30 (2d Cir. 1993).

The Clerk of Court is respectfully directed to enter judgment in favor of the United States and to close case number

20-cv-5850, to mail Mr. Folkes a copy of this Memorandum and Order and the judgment at FCI Fort Dix, and to note service on the docket.

**SO ORDERED.**

Dated:     Brooklyn, New York
           March 3, 2021


                                          /s/
                                   _____
                                   Hon. Kiyo A. Matsumoto
                                   United States District Judge