UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------X

UNITED STATES OF AMERICA,

                                     MEMORANDUM AND ORDER

       -against-                     18-CR-257 (KAM)

DAMIEN FOLKES,
              Defendant.

------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

            Before the Court is a *pro se* motion for compassionate release filed on May 13, 2021 by defendant Damien Folkes ("Mr. Folkes"), who is currently serving a 29-month sentence at the Fort Dix Federal Correctional Institution ("FCI Fort Dix"), to modify his prison sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). ECF No. 239, Motion to Reduce Sentence – *Compassionate Release* ("Def. Mot."). Mr. Folkes moves for a modification on the basis of the global COVID-19 pandemic and his pre-existing medical conditions. The government opposed the motion. ECF No. 240, Response in Opposition to Motion to Reduce Sentence ("Gov't Opp. Br."). On July 6, 2021, Mr. Folkes also filed a second motion to vacate his conviction pursuant to 28 U.S.C. § 2255 ("Section 2255"). ECF No. 245, Second Motion to Vacate under 28 U.S.C. 2255 / *Admit Petitioner to Bail and Appoint Counsel.* For the reasons set forth

herein, Mr. Folkes's motion for compassionate release and motion to vacate his conviction are respectfully DENIED.

## BACKGROUND

The Court assumes familiarity circumstances leading to the conviction of Mr. Folkes for conspiracy to import controlled substances, which circumstances were recounted in the Court's prior orders. In summary, on May 2, 2018, Mr. Folkes conspired with Tassana Guthrie ("Ms. Guthrie") to import illegal drugs into the United States. Gov't Opp. Br. Ms. Guthrie arrived at John F. Kennedy International Airport ("JFK Airport") in Queens, New York on a flight returning from Kingston, Jamaica. Gov't Opp. Br. at 1. She was selected for a Customs and Border Protection ("CBP") examination, during which CBP officers found 495.7 grams of cocaine hidden inside footware in her possession. *Id*. Ms. Guthrie admitted to the officers that: (1) she met Mr. Folkes in Jamaica through a mutual friend; (2) Mr. Folkes agreed to pay for her ticket to the United States; (3) Mr. Folkes and Ms. Guthrie were scheduled to depart Jamaica on the same day with Mr. Folkes acompanying her to the airport; and (4) Mr. Folkes asked Ms. Guthrie to place a pair of wedge sandals inside of her suitcase. *Id*. at 1-2.

That same day, Mr. Folkes was scheduled to arrive at JFK Airport from Jamaica. *Id*. at 2. When he arrived, Homeland Security Investigations agents ("HSI agents") placed him under

arrest. *Id.* Mr. Folkes admitted his involvement in the conspiracy, advised HSI agents he "take[s] responsibility for everything," and corroborated the majority of Ms. Guthrie's statements. *Id.* He claimed, however, that the drugs were for personal use. *Id.*

On May 23, 2018, a grand jury returned a two-count indictment against Mr. Folkes, charging him with conspiring to import more than 500 grams or more of cocaine and conspiring to possess with intent to distribute 500 grams or more of cocaine. ECF No. 13, Indictment as to Damien Folkes. On December 27, 2018, Mr. Folkes pled guilty to conspiring to import cocaine into the United States. ECF No. 68, Minute Entry for Plea Hearing on December 27, 2018; ECF No. 108, Transcript of Criminal Cause for Pleading on December 27, 2018. On October 13, 2020, Mr. Folkes was sentenced to 29 months of imprisonment, followed by three years of Supervised Release. ECF No. 186, Judgement as to Damien Folkes. Mr. Folkes is serving his sentence at FCI Fort Dix, with an anticipated release date of July 5, 2022. Federal Bureau of Prisons, "Find an inmate." available at https://www.bop.gov/inmateloc/ (accessed May 10, 2022). As of May 10, 2022, Mr. Folkes served nearly 22 months and had credit for good conduct time. Based on the record before the Court, Mr. Folkes has not committed any disciplinary infractions during his time in custody. ECF No. 240, Gov't Opp. Br. at 2.

**Defendant's Compassionate Release Motion**

On May 13, 2021, Mr. Folkes filed the instant *pro se* motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). ECF No. 239, Def. Mot. Mr. Folkes argued he should receive compassionate release because: (1) he suffers from high blood pressure and obesity; and (2) his vulnerability to COVID-19 and the conditions at FCI Fort Dix present "extraordinary and compelling" reasons to warrant compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). *Id.* The government opposed the motion, arguing that: (1) Mr. Folkes has not exhausted his administrative remedies as required by the First Step Act; (2) Mr. Folkes has not shown that his circumstances are "extraordinary and compelling" to warrant compassionate release; and (3) the 18 U.S.C. § 3553(a) factors weigh against Mr. Folkes's early release. ECF No. 240, Gov't Opp. Br. at 7-9, 10-21.

**Defendant's § 2255 Petition**

Mr. Folkes has also filed various correspondence seeking to vacate his conviction. ECF No 188, Affidavit by Damien Folkes dated October 13, 2020; ECF No. 189, Notice of Motion to Vacate Void Judgment by Damien Folkes dated October 19, 2020; ECF No. 191, Letter dated August 3, 2020 from Damien Folkes. On October 28, 2020, this Court re-characterized his various filings consolidating and construing them as a single petition brought under 28 U.S.C. § 2255. ECF No. 192, Order as to Damien Folkes

dated October 28, 2020.  The Court ordered the petitioner to inform the Court within 30 days of the October 28, 2020 Order whether he consented to have his multiple filings construed as a petition under Section 2255, and if he did not want his submissions to be construed as a Section 2255 petition, he was to inform the Court that he intended to withdraw his filings.  *Id.*  The Order also advised Mr. Folkes that defendants generally may file on Section 2255 petition, and if he did not inform the Court that he would withdraw his submissions, "the court will construe his filings as a Section 2255 petition, and Mr. Folkes would likely be barred from filing a subsequent petition."  *Id.*  On November 25, 2020, the petitioner filed a motion purportedly brought pursuant to Federal Rule of Civil Procedure 60(b), but did not inform the court whether he intended to withdraw his prior filings.  ECF No. 195, Motion to Vacate Void Judgement [sic].

Because Mr. Folkes did not inform the Court he did not want to file a Section 2255 petition, and did not withdraw his submissions, the Court construed his Rule 60(b) motion as a part of his newly consolidated Section 2255 petition, and issued an Order to Show Cause on December 2, 2020.  This Court ordered that "[r]ather than withdrawing his filings, [the petitioner] appears to have consolidated his claims for relief into a single motion. ECF No. 196, Order to Show Cause Memorandum and Order. Accordingly, the Court will construe [the petitioner's] motion as

a Section 2255 petition, rather than as a motion brought under Federal Rule of Civil Procedure 60(b)." *Id.* at 2-3.  In subsequent filings from Mr. Folkes, he acknowledged his consolidated Section 2255 petition.  ECF No. 219, Affidavit In Reply to Government's Opposition by Damien Folkes  at 1 ("I would like to say that your response to my 28 U.S. Code § 2255 has not addressed the predominant claims I have brought forward..."); ECF No. 207, Affidavit in Reply to the Attorney's Opposition by Damien Folkes at 1 ("However, as we can see from court transcripts and his affirmation to my 2255 Motion this is not so...").

On March 3, 2021, this Court denied Mr. Folkes's Section 2255 petition.  ECF No. 226, Order Denying Motion to Vacate.  Mr. Folkes was served with a copy of the Court's March 3, 2021 Order. *Id.*

## LEGAL STANDARD

### I.   18 U.S.C. § 3582(c)

The First Step Act, 18 U.S.C. § 3582(c), or the so-called "compassionate release" statute, creates an exception to the general prohibition against modifying a term of imprisonment once it has been imposed.  Pursuant to the First Step Act, defendants may move a court to "reduce" a term of imprisonment upon a finding that "extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing

Commission."  18 U.S.C. § 3582(c)(1)(A).  The Court may modify a sentence "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  *Id.* In *United States v. Saladino*, the Second Circuit held that the exhaustion requirement in § 3582(c)(1)(A) is not a jurisdictional limitation, but rather is a "claim-processing rule that may be waived or forfeited by the government."  7 F.4th 120, 121 (2d Cir. 2021).

The relevant policy statement, U.S.S.G. § 1B1.13, allows the court to reduce a term of imprisonment if "extraordinary and compelling reasons warrant the reduction," "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," and "the reduction is consistent with this policy statement."  Additionally, in considering a sentence reduction, the Court must apply the Section 3553(a) sentencing factors, including: (1) the nature and circumstances of the offense and the history and characteristics of the defendant, (2) the need for the sentence imposed to afford adequate deterrence to criminal conduct, (3) the need for the sentence imposed to protect the public from further crimes of the defendant, and (4) the need for the sentence imposed to provide the defendant with

needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. *See* 18 U.S.C. §§ 3553(a), 3583(d)(1).

The Sentencing Commission has determined that a defendant's circumstances meet the extraordinary and compelling standard, *inter alia*, when the defendant is "suffering from a terminal illness" or a "serious physical or medical condition ... that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility," or if, in the judgment of the BOP, the defendant's circumstances are extraordinary and compelling for "other reasons." U.S.S.G. § 1B1.13(1)(A) & Application Note 1(A), (D). In addition, the Sentencing Commission counsels that a court should reduce a defendant's sentence only after determining that "[t]he defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). As set forth below, although Congress has delegated responsibility to the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction," 28 U.S.C. § 994(t), the Second Circuit, in *United States v. Brooker*, 976 F. 3d 228 (2d Cir. 2020) has recognized that district courts may exercise discretion in such circumstances. The *Brooker* court held that district courts have "discretion to consider whether any reasons are extraordinary and compelling," and that "[n]either Application

Note 1(D), nor anything else in the now-outdated version of [U.S. Sentencing Commission] Guideline § 1B1.13, limits the district court's discretion" to do so.  976 F.3d 228, 237 (2d Cir. 2020). A "district court's discretion in this area—as in all sentencing matters—is broad." *Id.*  "The only statutory limit on what a court may consider to be extraordinary and compelling is that 'rehabilitation *alone* shall not be considered an extraordinary and compelling reason.'"  *Id.* at 237-38 (quoting 28 U.S.C. § 994(t) (emphasis in original, alterations omitted)).

"The defendant carries the burden of showing that he or she is entitled to a sentence reduction under the statute." *United States v. Schultz*, 2020 WL 2764193, at *2 (W.D.N.Y. May 28, 2020) (citing *United States v. Ebbers*, 432 F. Supp. 3d 421, 426 (S.D.N.Y. 2020)).  "Even if a defendant carries this burden, district courts have broad discretion in deciding whether to grant or deny a motion for a sentence reduction." *United States v. Cato*, No. 16-cr-326 (ARR), 2020 WL 5709177, at *3 (E.D.N.Y. Sept. 24, 2020) (internal quotation marks omitted).

## II.  28 U.S.C. § 2255

A prisoner in federal custody may challenge the validity of his sentence by filing a motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence on the basis "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to

impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *Adams v. United States*, 372 F.3d 132, 134 (2d Cir. 2004).

As a general matter, defendants get one opportunity to file a petition. *See* 28 U.S.C. § 2255 (h). A "second or successive motion" must be certified and filed with the appropriate Court of Appeals containing "newly discovered evidence" or a "new rule of constitutional law...that was previously unavailable." *See id.*; *see also* 28 U.S.C. § 2253(c); Miller-El v. Cockrell, 537 U.S. 322, 327 (2003) ("A petitioner satisfies [the standard under Section 2253(c)(2)] by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.").

## DISCUSSION

### I.  Mr. Folkes Is Not Entitled to Compassionate Release

Mr. Folkes concedes that he had not exhausted his administrative remedies for seeking compassionate release at the time he filed this application. ECF No. 239, Def. Mot. at 2. Nevertheless, he asks this Court to excuse § 3582(c)(1)(A)'s exhaustion requirement in light of the COVID-19 pandemic. *Id*. In opposition, the government argues that exhaustion is mandatory under the plain language of the First Step Act and supported by

the statute's legislative history, and that because Mr. Folkes filed the instant motion before requesting the relief sought from the Warden at FCI Fort Dix, his motion should be denied.  ECF No. 140, Gov't Opp. Br. at 8.  The Court notes that on November 18, 2021, Mr. Folkes provided the Court with a denial of compassionate release from the Fort Dix Warden dated June 20, 21, and that both the relief sought with the Bureau of Prisons and the decision came after Mr. Folkes filed the instant motion before this Court.  ECF No. 254, Status Request for Compassionate Release.

The Second Circuit in *Saladino* held that § 3582(c)(1)(A)'s exhaustion requirement is not a jurisdictional limitation on a court's power to consider an inmate's motion for compassionate release," but rather a "claim-processing rule that may be waived or forfeited by the government."  7 F.4th 120, 121 (2d Cir. 2021).  Courts in this Circuit have also recognized that the First Step Act's "text, history, and structure all counsel in favor of concluding that the statute's exhaustion requirement is amenable to equitable exceptions." *United States v. Scparta*, 2020 WL 1910481, at *8 (S.D.N.Y. Apr. 20, 2020); *see also United States v. Haney*, 454 F. Supp. 3d 316, 321 (S.D.N.Y. 2020)(waiving the exhaustion requirement where "strict enforcement of the 30-day waiting period" would not serve the First Step Act's congressional intent of providing "meaningful and prompt judicial determination of whether [a defendant] should be released.")  To be excused from

the exhaustion requirement, a defendant seeking early release must show that exhaustion of his remedies would: (1) be futile; and (2) cause him irreparable harm. *Scparta*, 2020 WL 1910481, at *8 (S.D.N.Y. Apr. 20, 2020).

Though the Court notes that the exhaustion requirement may be waived due to COVID-19's impact on a petitioner's need for "meaningful and prompt judicial determination," it does not find the need for a waiver persuasive here. Mr. Folkes has not proffered any evidence to show that an exhaustion of his remedies would be futile or cause him irreparable harm. In his motion, Mr. Folkes argues that exhaustion should be excused in this case because "the harm suffered while waiting for exhaustion" due to the "exigent circumstances of the COVID-19 virus" is irreparable. ECF No. 239, Def. Mot. at 2. His argument is simply insufficient to waive the exhaustion requirement. *See United States v. Sanchez*, 2021 WL 2156225, at *3 (S.D.N.Y. May 27, 2021) (denying early release of defendant where the defendant failed to present his new claims for compassionate release, including that he had contracted COVID-19, to the Warden of FCI Fort Dix); *see also United States v. Nwankwo*, 2020 WL 7335287, at *1 (S.D.N.Y. Dec. 14, 2020) (holding the defendant was required to exhaust his administrative remedies, including his new claim of a "documented outbreak" of COVID-19).

12

In *United States v. Scparta*, the court excused Mr. Scparta's failure to exhaust his administrative remedies based on a finding that waiting for him to do so would both be futile and cause him irreparable harm. *Scparta*, 2020 WL 1910481, at *8. Specifically, the court reasoned: (1) the federal correctional institution ("FCI") where Mr. Scparta held was at the time was "a national leader in documented cases of COVID-19[;]" and (2) requiring Mr. Scparta "to wait an additional two weeks (until 30 days lapse under the First Step Act's exhaustion requirement) could be the difference between life and death, and if he fell seriously ill or die[d], he would have suffered irreparable harm and his motion seeking release would be futile." *Id.* Unlike the FCI in *Scparta*, and because the BOP has since found ways to manage the COVID-19 pandemic, FCI Fort Dix has zero documented cases of COVID-19 among inmates and only two among staff as of May 10, 2022. *See* Federal Bureau of Prisons, "COVID-19 Cases," available at https://www.bop.gov/coronavirus/ (accessed May 10, 2022). Moreover, unlike Mr. Scaparta, Mr. Folkes is not suffering from unique health circumstances such that requiring him to exhaust his administrative remedies would risk catastrophic health consequences.

Thus, because Mr. Folkes has not shown how exhaustion would cause irreparable harm or would be futile in this case, his

motion for compassionate release is premature and should be denied on this basis alone.

## II. Mr. Folkes's Circumstances Are Not "Extraordinary and Compelling" Warranting Compassionate Release

Even if the Court were to excuse the failure to exhaust, in his *pro se* motion, Mr. Folkes moves for a reduction of his sentence on two grounds which do not constitute extraordinary or compelling circumstances: (1) his medical conditions and fear of re-contracting COVID-19, and (2) the conditions of his confinement at FCI Fort Dix. ECF No. 239, Def. Mot. 2-35. The government asserts the presence of COVID-19 at FCI Fort Dix alone does not warrant compassionate release, and further argues Mr. Folkes has not presented any other "extraordinary and compelling reason" warranting compassionate release because: (1) Mr. Folkes's medical conditions are neither terminal nor severely limiting of his ability to function in a correctional setting; (2) Mr. Folkes has already contracted and recovered from COVID-19; and (3) he has declined to take the COVID-19 vaccine. ECF No. 240, Gov't Opp. Br. at 10-21. Here, Mr. Folkes's age, medical conditions, and the conditions of confinement at FCI Fort Dix do not provide "extraordinary and compelling" reasons warranting release.

### A. Mr. Folkes's Pre-Existing Medical Conditions and Medical History

14

Mr. Folkes is 41-years-old and suffers from high blood pressure and obesity. ECF No. 239, Def. Mot. at 31. As of March 19, 2021, Mr. Folke's blood pressure was measured at 126/79, and his body mass index ("BMI") was determined to be 31. *See* ECF No. 240-1, Exhibit A ("Exhibit A") at 3, 5. In February 2021, Mr. Folkes tested positive for COVID-19 and has since recovered. Exhibit A at 2, 81. According to his medical records, he did not exhibit any severe COVID-19 symptoms. *Id.* On March 19, 2021, Mr. Folkes was offered and declined the Pfizer COVID-19 vaccine, even though he has no known medical contravention for the vaccine. Exhibit A at 57, 86.

As to Mr. Folkes's blood pressure, the government relies on various online medical sources to argue that though Mr. Folkes's pressure is considered to be "elevated," it does not rise to the level of hypertension. ECF No. 240, Gov't Opp. Br. at 19. Moreover, even if Mr. Folkes did have hypertension, the government maintains that the CDC "has consistently indicated that there is insufficient evidence to conclude that hypertension places a person at a greater risk of a severe outcome from COVID-19." *Id.* Finally, the government argues that a majority of courts have denied defendants compassionate release when hypertension is the only potential risk factor presented. *Id.* Moreover, there is no evidence in the record that the BOP is unable to provide adequate treatment for elevated blood pressure.

As to Mr. Folkes's obesity, the government concedes that: (1) the CDC has stated that "obesity marked by a BMI of 30 or more present[s] a risk of a severe outcome from COVID-19[;]" and (2) "this condition, where a vaccine has not been offered, qualifies as an 'extraordinary and compelling reason' warranting compassionate release." *Id.* at 20.  The government emphasizes, however, that Mr. Folkes was offered the COVID-19 vaccine in this case but refused it.  *Id*.  Additionally, the government argues that courts have "denied compassionate release based on mild obesity alone, particularly where the defendant is young and does not present any related ailment."  *Id*.

Even when a defendant has suffered from hypertension *and* obesity, courts in this Circuit have declined to grant compassionate release.  *See United States v. Kosic*, 2021 WL 1026498, at *2 (S.D.N.Y. Mar. 17, 2021) (acknowledging that Kosic's hypertension and diabetes put him at increased risk of contracting COVID-19, but denying early release where Kosic previously tested positive for and recovered from COVID-19 and received the Moderna vaccine); *United States v. Carr,* 2021 WL 2043500, at *2-3 (S.D.N.Y. May 20, 2021) (denying compassionate release where the defendant was 59-years-old and suffered from both hypertension and obesity).

Moreover, when a defendant has contracted and recovered from COVID-19 while at an FCI, courts in this district have declined to find extraordinary factors favoring early release. *See*

*United States v. Alamo*, 2021 WL 1904975, at *3 (S.D.N.Y. May 12, 2021) (denying compassionate release where the defendant contracted COVID-19 while in custody and quickly recovered); *Kosic*, 2021 WL 1026498 at *2-3 (internal citations omitted) ("Having contracted the virus and recovered, Kosic's reason for a sentence reduction — namely, that it is necessary to protect his health — is significantly less compelling.").

Furthermore, because Mr. Folkes has had and recovered from COVID-19, his risk of re-infection is significantly reduced. *See* Science Brief: SARS-Cov-2 Infection-Induced and Vaccine-induced Immunity, https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/vaccine-induced-immunity.html (last updated on Oct. 29, 2021) (Center for Disease Control reporting that a previous diagnosis of COVID-19 "significantly enhances protection and further reduces risk of reinfection."); *see also United States v. Rodriguez-Francisco*, 2021 WL 326974, at *2 (S.D.N.Y. Feb. 1, 2021) ("because [defendant] has already had COVID-19, his risk of reinfection is extremely low"). The Center for Disease Control has also noted "[w]ith high levels of population immunity from vaccines or prior infection, 5-7 breakthrough cases and reinfections more frequently result in asymptomatic infections or milder illness in most persons." See Science Brief: Science Brief: Indicators for Monitoring COVID-19 Community Levels and Making Public Health Recommendations,

https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/indicators-monitoring-community-levels.html (last updated on Mar. 4, 2022).

As previously discussed, there are zero cases of COVID-19 currently amongst prisoners and only two among staff at Fort Dix.  Furthermore, 2,881 inmates and 300 staff members at FCI Fort Dix are fully vaccinated against COVID-19 as of May 10, 2022, further reducing Mr. Folkes's risk of re-infection. *Federal Bureau of Prisons, COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/index.jsp; *Alamo*, 2021 WL 1904975, at *4 (denying compassionate release and noting at the time of the decision, there were zero COVID-19 cases at FCI Fort Dix, reducing the defendant's risk of infection); *see also United States v. Frame*, 2021 WL 1338822, at *3 (S.D.N.Y. Apr. 8, 2021) ("With fellow inmates now being vaccinated, [defendant's] risk of reinfection is diminishing.").

Courts have nearly uniformly denied compassionate release to defendants who either have been vaccinated against COVID-19 or were offered yet refused the vaccine. *See Alamo*, 2021 WL 1904975, at *3 (denying compassionate release where FCI Fort Dix medical personnel offered to administer the Pfizer/BioNTech COVID-19 vaccine to the defendant in March of 2021, but he refused vaccination); *see also Sanchez*, 2021 WL 2156225, at *4 (same); *United States v. Robinson*, 2021 WL 1565663, at *3 (S.D.N.Y. Apr.

21, 2021)("[C]ourts in this district and elsewhere have nearly uniformly denied compassionate release sought for medical reasons [when] ... [the defendant] refused the COVID-19 vaccine."); *United States v. King*, 2021 WL 736422, at *2 (S.D.N.Y. Feb. 24, 2021) ("[I]n declining vaccination, Defendant declined the opportunity to reduce his risk exposure to COVID-19 dramatically" and therefore "cannot reasonably expect that prolonging his risk by declining vaccination will be rewarded with a sentence reduction."); *United States v. Johnson,* 2021 WL 640054, at *4-5 (S.D.N.Y. Feb. 18, 2021) (acknowledging defendant's increased risk of re-contracting COVID-19 due to pre-hypertension and obesity, yet denying compassionate release because defendant received the COVID-19 vaccine); *United States v. Warren*, 2021 WL 4059437, at *3-4 (E.D.N.Y. Sept. 7, 2021) (holding an application for compassionate release is undercut by a refusal to accept a COVID-19 vaccine because "[defendant's] expressed fear of contracting a COVID-19 infection when he has—twice—declined a vaccine that would both decrease his risk of infection and protect against serious illness and death" is questionable).

Mr. Folkes's prior COVID-19 infection and his refusal to take a vaccine that has been shown to be effective at preventing COVID-19, and that will "help protect [him] from getting sick or severely ill" should he again be infected, undermine his argument that he is at risk of infection. *COVID-19 Vaccines Work*, CDC,

https://www.cdc.gov/coronavirus/2019-

ncov/vaccines/effectiveness/work.html (last updated Apr. 7, 2021).

Finally, Mr. Folkes is only 41-years-old and has not

otherwise provided any evidence that he is "unable to manage his

medical needs in prison." *Kosic,* 2021 WL 1026498, at *2–3; *United

States v. Norville*, 2021 WL 1731778, at *2 (S.D.N.Y. May 3, 2021)

(finding the defendant at forty-nine-years old "is relatively

young" which further reduces his risk . . . and [a]lthough the

risk of severe illness from COVID-19 increases with age, this risk

increases from the age of 50," making COVID-19 "extremely dangerous

for people in their mid-fifties, sixties and seventies."); *United

States v. Robinson*, No. 17-cr-611, 2021 WL 1565663, at *3 (S.D.N.Y.

Apr. 21, 2021) (finding that defendant's "comparative youth [of 39

years of age], his BMI being only slightly over the obesity

threshold, and his refusal to be vaccinated, undermine[d] his claim

that there is an extraordinary and compelling reason for release);

*United States v. Colon*, No. 18 Cr. 6040, 2021 WL 1246187, at *3

(W.D.N.Y. Apr. 5, 2021) (denying compassionate release where

defendant refused to accept the COVID-19 vaccine, was young, and

had a BMI only "slightly over" obese levels).

### B. Conditions at FCI Fort Dix

The crux of Mr. Folkes's argument is that the conditions

of FCI Fort Dix as a result of the COVID-19 pandemic "jeopardize"

inmates' "health and safety" on a daily basis and place Mr. Folkes

"at an extraordinary risk" of re-contracting COVID-19, warranting early release in his case.  ECF No. 239, Def. Mot. at 6-9.  This Court and the majority of courts in this circuit have rejected similar arguments.  *See United States v. Brooks*, 2021 WL 1550268, at *1 (S.D.N.Y. Apr. 20, 2021) ("While COVID-19 has created harsh conditions of confinement for Mr. Brooks, the same can be said for all other detainees at FCI Fort Dix and, indeed, all other inmates in prison facilities around the country . . . [w]e do not understand the plain meaning of "extraordinary and compelling" nor Congress's use of those terms in Section 3582 to contemplate a generalized fear of contracting COVID-19, without more, as warranting an immediate release from prison."); *Norville,* 2021 WL 1731778, at *2 ("[T]he conditions at F.C.I. Fort Dix, though far from ideal, are insufficient to constitute extraordinary and compelling circumstances at present").

     Further, in denying early release, courts have noted the conditions at FCI Fort Dix have changed dramatically since the beginning of the pandemic and have acknowledged the BOP's efforts "to prevent and contain COVID-19 infection at Fort Dix." *Kosic*, 2021 WL 1026498, at *3-4.  Those efforts include: (1) "COVID-19 screening[;]" (2) "disinfection measures[;]" and (3) vaccine distribution, all of which have significantly decreased the total number of cases among inmates.  *Id.*; *United States v. Santiago-Almonte,* 2021 WL 1742411, at *2 (W.D.N.Y. May 4, 2021) ("[W]hile

prison settings present challenges for preventing the spread of COVID-19, the conditions at FCI Fort Dix now appear well-controlled in terms of COVID-19, despite earlier outbreaks of the virus.").

As there are no reported cases of COVID-19 at Fort Dix May 10, 2022, to date and vaccines have become increasingly available to both inmates and staff, this Court cannot and does not find that the conditions at FCI Fort Dix warrant a sentence reduction in this case. *See Norville*, 2021 WL 1731778, at *2 ("[W]hile the Court recognizes, and is sympathetic to, the acute threat from COVID-19 incarcerated individuals face as a result of cramped and unsanitary conditions and issues with institutional responses to the pandemic, this threat alone does not constitute an extraordinary and compelling circumstance.")

For these reasons, the Court concludes that Mr. Folkes's age, medical conditions, and the conditions at FCI Fort Dix do not provide "extraordinary and compelling" reasons warranting compassionate release.

## III.  The § 3553(a) Factors

The Court must also consider the Section 3553(a) sentencing factors, including, *inter alia*, the nature and circumstances of the offense, Mr. Folkes's criminal history, the need to afford adequate deterrence to criminal conduct, and the need to protect the public from potential future crimes committed by Mr. Folkes. *See* 18 U.S.C. § 3553(a).  Even if Mr. Folkes made

22

a showing of "extraordinary and compelling reasons" warranting a reduction of his original sentence, the statutory sentencing factors weigh against Mr. Folkes's early release from prison. First, Mr. Folkes's offense is a serious one.  In 2018, he was convicted for conspiring to import and possess with intent to distribute more than 500 grams or more of cocaine into the United States.  He was sentenced to 29 months of imprisonment, followed by three years of Supervised Release. *See Alamo*, 2021 WL 1904975, at *4–5 (finding conspiracy to distribute and possess with intent to distribute 500 grams or more of cocaine was serious and dangerous under the 3553(a) factors); *United States v. Keitt*, 2020 WL 7404486 (S.D.N.Y. Dec. 17, 2020)(denying the defendant's motion for compassionate release where the defendant was convicted of conspiracy to distribute and possess with intent to distribute cocaine because "of the seriousness of the offense and the harm it caused to the community").

Moreover, as noted by the government, Mr. Folkes was "an organizer of a drug conspiracy that involved members of his own family . . . making his culpability far higher than the average drug trafficker."  ECF No, 240, Gov't Opp Br. at 21; *see Alamo*, 2021 WL 1904975, at *4–5 (noting that "[i]n addition to the harm inflicted on drug users, the high stakes drug dealing in which defendant engage[d] is a catalyst for significant violence that may harm the defendant, his family, and the surrounding

community.")   Indeed, Mr. Folkes involved his wife in the drug importation conspiracy, and she suffered a violent attack and injuries from a co-conspirator for while in custody.

Finally, the government argues that at the time of filing his motion, Mr. Folkes had only served approximately 6 months of his 29-month sentence.  ECF No, 240, Gov't Opp Br. at 21.  Though Mr. Folkes has now served 22 months of his sentence, this Court agrees that releasing him early would minimize the severity of his offense and not serve the interest of justice.   Releasing Mr. Folkes now would: (1) "defeat the deterrent effect of the sentence[;]" and (2) "fail to protect the public from further crimes." *United States v. Rubert*, 2020 WL 4926391 (S.D.N.Y. Aug. 21, 2020); *Keitt*, 2020 WL 7404486, at *2 ("[A] substantial sentence was required to provide just punishment and reflect the seriousness of the offense. Granting release so early in the term of incarceration would undercut those interests.").  Therefore, the § 3553(a) factors weigh against compassionate release in this case.

## IV.   Mr. Folkes Is Procedurally Barred from Filing a Subsequent Petition Pursuant to 28 U.S.C. § 2255

The Court now addresses that Mr. Folkes is procedurally barred from filing a second petition pursuant to 28 U.S.C. § 2255. Based on the facts above, Mr. Folkes has already consolidated his prior filings into a Section 2255 petition and acknowledged the Court's consolidation in subsequent filings.  He cannot file a

second habeus petition without seeking certification from the Second Circuit for a successive petition. Mr. Folkes has not appropriately certified for a successive petition with the Second Circuit. This Court hereby dismisses Mr. Folkes's second Section 2255 petition.

**CONCLUSION**

For the foregoing reasons, Mr. Folkes's motion for compassionate release is respectfully DENIED.  The Court is concerned for all inmates and respects the challenges of incarceration during an unprecedented global pandemic, but the Court must also consider the protection of the public at large. Mr. Folkes has served approximately 22 months of his 29-month sentence.  Despite his hypertension and obesity and the past history of COVID-19 at FCI Fort Dix, Mr. Folkes has not shown the "extraordinary and compelling reasons" required to warrant a modification of his sentence, and the § 3553(a) factors weigh in favor of Mr. Folkes completing his sentence.

Mr. Folkes's second petition for habeus corpus relief is also DENIED for the reasons stated above.

The Clerk of Court is respectfully requested to serve a copy of this Memorandum and Order on defendant and note service in the docket.

SO ORDERED.

Dated:    Brooklyn, New York

May 10, 2022

/s/ Kiyo A. Matsumoto

Hon. Kiyo A. Matsumoto

United States District Judge

Eastern District of New York